USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 2 2 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Residential Capital, LLC,<br><br>Debtor,<br>_____<br><br>Francine Silver,<br>  Appellant,<br><br>  -v-<br><br>ResCap Borrower Claims Trust,<br>  Appellee. | 15-cv-5423 (AJN)<br><br>MEMORANDUM &<br>ORDER |

ALISON J. NATHAN, District Judge:

Appellant Francine Silver, proceeding *pro se*, appeals a Bankruptcy Court order

sustaining the objection of Appellee ResCap Borrower Claims Trust ("the Borrower Trust") to a

claim that Silver filed in the bankruptcy proceeding below.  Silver's claim stems from a dispute

with GMAC Mortgage, LLC ("GMACM"), one of the debtors in the bankruptcy, over

GMACM's efforts to foreclose on a piece of property Silver owned in California.  For the

reasons that follow, the judgment of the Bankruptcy Court is AFFIRMED.

I.    BACKGROUND[1]

A.    Factual Background

This appeal arises out of the consolidated bankruptcies of a group of entities, including

GMACM, that acted as lenders and servicers for residential mortgages.  Those entities filed

---

[1] The facts set forth herein are taken from the record on appeal, as designated by the parties.  Unless
otherwise noted, citations are to the Bankruptcy Court's docket, No. 12-12020.

petitions for bankruptcy under Chapter 11 of the Bankruptcy Code on May 14, 2012. *See* Dkt. Nos. 1, 59. The Bankruptcy Court confirmed the Chapter 11 Plan ("the Plan") on December 11, 2013, and the Plan took effect on December 17, 2013. Dkt. Nos. 6065, 6137. One component of the Plan was the creation of the Borrower Trust, which was established for the benefit of borrowers who have claims against the debtor entities and their predecessors in interest. Dkt. No. 6065, App. 1 ("the Plan") at 6. The Plan sets out a procedure for objecting to claims made by borrowers and a timeframe in which those objections must be made. Silver is one of the borrowers who has lodged a claim against the Borrower Trust.

Silver's claim stems from a dispute over a mortgage she obtained on a piece of property in California ("the Property"). In March 2006, Silver obtained a $1.3 million refinancing loan from Nationwide Lending Group. Dkt. No. 8019, Ex. 3-A at 2. The loan was evidenced by a note and secured by a deed of trust. *Id.* at 2-10, 11-31. The deed of trust identified Land America Commonwealth as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. *Id.* at 12. The loan was initially serviced by Greenpoint Mortgage Funding, but GMACM succeeded Greenpoint as the servicer in December 2006. Dkt. No. 8019, Ex. 3 ¶ 4. MERS assigned the deed of trust to GMACM on July 5, 2011. Dkt. No. 8019, Ex. 4-A (the "GMACM assignment"). The GMACM assignment was signed by Jacqueline Keeley, an "Assistant Secretary" for MERS. *Id.* A day later, GMACM executed a Substitution of Trustee by appointing Executive Trustee Services, LLC ("ETS") as Trustee under the deed of trust. Dkt. No. 8019, Ex. 4-B (the "ETS assignment"). Again, Jacqueline Keeley's signature appears on the assignment—this time in her capacity as an "Authorized Officer" for GMACM. *Id.* Silver contests the validity of the signature on both of these assignments.

On July 21, 2011, ETS commenced foreclosure on the Property by issuing a Notice of Default. Dkt. No. 8019, Ex. 3-B. The Notice of Default indicated that Silver was behind in her payments in the amount of $58,595.72. *Id.* at 2. Foreclosure proceedings were halted, however, when Silver filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California ("California Bankruptcy Court") on November 14, 2011. Dkt. No. 8019, Ex. 7. The California Bankruptcy Court subsequently denied GMACM's request for relief from the automatic stay on the grounds that the court had questions as to the authenticity of Keeley's signature on the GMACM assignment. Dkt. No. 8019, Ex. 10; Appellee Br. 8.

The California Bankruptcy Court issued Silver a discharge from her Chapter 7 case on March 6, 2012. Dkt. No. 8019, Ex. 11. On that same day, Silver filed an adversary proceeding complaint in the California Bankruptcy Court against GMACM seeking to quiet title to the Property. Dkt. No. 8019, Ex. 12. Silver alleged in the complaint that Keeley's signature was forged in either (or both) the GMACM assignment and the ETS assignment. *Id.* ¶ 14. GMACM moved to dismiss that complaint on August 6, 2012, in part because Silver had been granted a discharge and the California Bankruptcy Court therefore lacked subject matter jurisdiction. Dkt. No. 8019, Ex. 15. The court granted GMACM's motion, holding that it lacked jurisdiction over Silver's claim. Dkt. No. 8019, Ex. 17 at 4 of 7.

Shortly thereafter, on September 17, 2012, Silver filed a complaint in California Superior Court asserting a wrongful foreclosure action against GMACM. Dkt. No. 8019, Ex. 5-A. GMACM attempted to proceed with foreclosure, however, and informed Silver that it had scheduled a foreclosure sale for November 5, 2012. Dkt. No. 8019, Ex. 3-D. In response, Silver obtained a temporary restraining order preventing the foreclosure sale from going forward and sought a preliminary injunction. Dkt. No. 8019, Exs. 5-H at 6 of 10, 5-B. Approximately

nineteen months later, in June 2014, the California Superior Court issued an order granting Silver's request for a preliminary injunction. Dkt. No. 8019, Ex. 5-H. The court found there to be "substantial evidence" that at least one of the two assignments with Keeley's signature was "fraudulent or contain[ed] fraudulent signatures." *Id.* at 1-2.

### B.        Procedural History

While Silver's litigation unfolded in California, she filed the claim that is the source of this appeal in the bankruptcy proceeding below. Silver filed a $3 million claim against Residential Capital, LLC on June 4, 2012, citing "[m]ortgage litigation, fraud, [and] unjust enrichment" as the bases for her claim. Dkt. No. 8019, Ex. 1 at 2 of 133. The Bankruptcy Court subsequently redesignated her claim as one against GMACM. *See* Dkt. No. 6706 at 1. On March 7, 2014, Silver filed a "Motion for Payment" of her claim in which she argued that hers was an "allowed claim" under the Plan because the Debtors had not objected to it before the Plan became effective. Dkt. No. 6639. The Bankruptcy Court denied her motion. Dkt. No. 6706. The court explained that Silver's claim had not yet been deemed "allowed" and that the deadline for the Borrower Trust to object to her claim had not yet passed. *Id.* at 2. Silver's subsequent motion for reconsideration was denied. Dkt. No. 6818.

Silver appealed. The full procedural history of that appeal is recounted in the Bankruptcy Court's order below, including two separate default judgment motions Silver filed in federal district court on the grounds that the Borrower Trust allegedly missed deadlines to file opposition briefs. *See* Dkt. No. 8788 ("Bankr. Op.") at 10-11. The district court (Judge Daniels) denied both default judgment motions and denied Silver leave to file an interlocutory appeal. *See In re Residential Capital, LLC*, No. 14-CV-3630 (S.D.N.Y. Mar. 15, 2015), Dkt. No. 34 ("Daniels Op.").

On January 22, 2015, the Borrower Trust filed its objection to Silver's claim. Dkt. No. 8019. The Borrower Trust argued, *inter alia*, that GMACM had the right to foreclose on the Property, that Silver had failed to sufficiently plead a mortgage fraud claim, and that GMACM was not unjustly enriched when it collected payments as the servicer for Silver's mortgage. *Id.* at 23-29. The Borrower Trust submitted several declarations in support of its objection, including one from Jaqueline Keeley (the woman whose signature appears on the two assignments of the deed of trust). *Id.* Ex. 4. Keeley affirmed that she had the authority to execute, and did in fact execute, the two assignments. *Id.* ¶¶ 6-7, 9-10. In light of the fact that both the California Bankruptcy Court and the California Superior Court had expressed concerns that one or both of the assignments was forged, however, the Bankruptcy Court held an evidentiary hearing on the objection. Bankr. Op. at 15. At the hearing, the Borrower Trust called Keeley as a witness, and she testified under oath that she personally signed both the GMACM assignment and the ETS assignment. Dkt. No. 8535 at 20:2 – 22:14; 24:1 – 26:3. Although Silver was given an opportunity to attend the hearing and cross-examine Keeley, she declined to do so. Bankr. Op. at 2-3 & n.3. The Bankruptcy Court found "that Keeley's testimony was truthful and persuasive." *Id.* at 16. It "expressly [found] that Keeley signed each of [the assignments] and her signature was notarized by other GMACM employees in the same office who knew Keeley and regularly notarized documents with Keeley's signature." *Id.*

Accordingly, the Bankruptcy Court sustained the Borrower Trust's objection, holding that the two proffered bases for Silver's claim—her wrongful foreclosure and unjust enrichment causes of action against GMACM—were unavailing. *Id.* at 2-3. Specifically, the court concluded that the Borrower Trust had "met its burden of establishing that GMACM had standing to foreclose on the Property and properly proceeded to do so under California law." *Id.*

at 22. That was enough to "shift[] the burden to Silver to prove by a preponderance of the evidence that her Claim should be allowed." *Id.* at 22-23. Because "Silver failed to do so," the court sustained the Borrower Trust's objection with respect to Silver's wrongful foreclosure cause of action. *Id.* at 23. The Bankruptcy Court also sustained the Borrower Trust's objection with respect to Silver's unjust enrichment cause of action on the grounds that Silver failed to show that GMACM was not entitled to collect the payments it did as servicer of the mortgage. *Id.* at 23-24. On July 6, 2015, Silver noted a timely appeal. *See* No. 15-cv-5423, Dkt. No. 1.

## II.   LEGAL STANDARD

A district court reviews a bankruptcy court's legal conclusions *de novo*, but it must accept the bankruptcy court's factual findings "unless clearly erroneous." *In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005) (quotation marks and citation omitted). A finding is "clearly erroneous" when "the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quotation marks and citation omitted). A reviewing court must give "particularly strong deference" to a bankruptcy court's "findings of fact based on credibility assessments of witnesses it has heard testify." *In re Boyer*, 328 F. App'x 711, 716 (2d Cir. 2009) (quotation marks omitted) (quoting *United States v. Canova*, 412 F.3d 331, 357 (2d Cir. 2005)). Where, as here, a litigant is proceeding *pro se*, it is "well established" that her submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks, citation, and emphasis omitted).

When a party in a bankruptcy proceeding correctly files proof of a claim, that "constitutes prima facie evidence of the validity of the claim." *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000). In order to "overcome this prima facie evidence," a party objecting to the claim "must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Id.* If the objecting party does so, the burden shifts "back to the claimant, [who] must then prove by a preponderance of the evidence that under applicable law the claim should be allowed." *In re Motors Liquidation Co.*, No. 12-CV-6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (quotation marks and citation omitted).

## III.   DISCUSSION[2]

Silver puts forward several arguments in favor of reversing the Bankruptcy Court's decision to sustain the Borrower Trust's objection to her claim. Broadly speaking, those arguments fit into four categories: first, that the Bankruptcy Court erred in evaluating the merits of the Borrower's Trust objection; second, that the doctrine of unclean hands should apply to the Borrower Trust; third, that the Bankruptcy Court should have entered a default judgment on Silver's Motion for Payment; and fourth, that Silver was denied due process because the Bankruptcy Court was not impartial. None of these arguments has merit.

### A.   The Bankruptcy Court's Decision on the Merits

---

[2] Silver argues that the Borrower Trust's brief "should be rejected and struck in [its] entirety" because it exceeds the page limit imposed by the Local Rules. Reply Br. 1. The Court, however, has already granted permission for the Borrower Trust to exceed the allowed page limit, *see* No. 15-cv-5423, Dkt. No. 14, and there is no basis for revisiting that decision. The Court has therefore considered the arguments in the Borrower Trust's brief in deciding this appeal.

Silver contends that the Bankruptcy Court improperly sustained the Borrower Trust's objection to her claim and that her claim should already have been paid.   Her principal argument is that her $3 million claim was an "allowed claim" under the Plan, and that she was therefore entitled to payment as of the Plan's Effective Date (December 17, 2013).   Appellant Br. 1. Specifically, Silver points to Article VIII of the Plan, which governs the procedures for resolving disputed claims, and cites language indicating there are some claims that were "deemed Allowed as of the Effective Date." *Id.* (quoting Plan at 95).   She argues that, because the Borrower Trust did not object to her claim by the Effective Date, her claim must have been allowed and is no longer subject to objection. *Id.* at 1-4.   But as the Bankruptcy Court explained on multiple occasions, and as Judge Daniels reaffirmed in denying Silver leave for an interlocutory appeal, Silver's argument rests on a misunderstanding of the terms of the Plan. *See* Dkt. Nos. 6706 at 2, 6818 at 3; Daniels Op. at 1.

As relevant here, a claim is deemed "allowed" under the Plan if it is "evidenced by a valid Proof of Claim . . . [and] the Debtors or other parties-in-interest have not Filed an objection to the allowance thereof *by the Claims Objection Deadline.*" Plan at 2 (emphasis added).   The Plan defines the Claims Objection Deadline as "(i) two hundred seventy (270) days following the Effective Date or (ii) such other later date the Bankruptcy Court may establish." Plan at 8.   The initial Claims Objection Deadline was September 15, 2014, but the Bankruptcy Court extended it to June 15, 2015, and later to March 15, 2016.   Dkt. No. 8742 at 3-4.   The Borrower Trust's objection to Silver's claim, filed on January 22, 2015, was therefore well within the Claims Objections Deadline, and Silver's claim was not automatically deemed an "allowed claim" under the Plan. *See* Dkt. No. 6818 at 3 (explaining that "[t]he Plan does not require the Debtors to object to all claims *before* the Effective Date; to the contrary, the Plan explicitly contemplates

8

that claims objections may occur *after* the Effective Date" (emphasis in original)).  Silver argues

that neither the Bankruptcy Court nor Judge Daniels have addressed "the relevance of the

controlling and contractually binding language of the plan."  Reply Br. 1 (emphasis omitted).

But Silver's own briefing implicitly acknowledges that, in order to be entitled to payment, her

claim must "me[e]t the plan definition of an allowed claim."  *Id.* at 2.  Because her claim did not

meet that definition as of the Effective Date, it was not an allowed claim, and Silver was not

entitled to payment before the Borrower Trust filed its objection.

Turning to the validity of that objection, Silver argues that the Bankruptcy Court erred

because it improperly credited the testimony of Jacqueline Keeley.  *See* Appellant Br. 17-20.

That testimony was central to the court's holding that GMACM had standing to foreclose on the

Property, and that Silver thus had no wrongful foreclosure claim against the Borrower Trust.

Bankr. Op. at 22.  Silver is clearly skeptical of Keeley's testimony—at points she even goes so

far as to suggest that it was not really Keeley who appeared before the Bankruptcy Court.  *See*

Appellant Br. 7 (noting that "[a]t the evidentiary hearing a purported Jaqueline Keeley

testified").  But as the Bankruptcy Court explained, the time to raise any concerns about

Keeley's reliability as a witness was at the evidentiary hearing, where Silver was expressly

afforded the opportunity to cross-examine Keeley.  Bankr. Op. at 2-3 & n.3.  Silver provides

several reasons why she did not participate in the evidentiary hearing, despite apparently

listening in via telephone.  *See* Appellant Br. 19-20.  But any uncertainty she had as to how the

hearing would proceed, along with any reasons she may have had for wanting to adjourn the

hearing, needed to be raised with the Bankruptcy Court *before* the hearing was held.  She cannot

now challenge the evidence that she had ample opportunity to contest.  Even if she could, this

Court would still owe the Bankruptcy Court "particularly strong deference" with respect to its

assessment of Keeley's credibility. *In re Boyer*, 328 F. App'x at 716 (quotation marks and citation omitted).   In light of that deference (though the result would be the same without it), the Court has no difficulty affirming the Bankruptcy Court's finding that Keeley testified credibly as to the authenticity of her signatures on the GMACM assignment and the ETS assignment.

Silver's efforts to undermine that finding—by alleging that Keeley worked in an office where other individuals engaged in "fraudulent robo-signing" and that "[t]he Keeley signatures are very obviously signed by more than one person," Appellant Br. 18—are unpersuasive in the face of the Bankruptcy Court's unequivocal finding that Keeley was credible.  Silver does not contest the premise that if the assignments were valid, then GMACM had standing to foreclose. *See* Bankr. Op. at 19-22.  Because the Court agrees that the assignments were valid, the Court affirms the Bankruptcy Court's conclusion that Silver's wrongful foreclosure cause of action cannot form the basis of her claim.

The only other basis for Silver's $3 million claim against the Borrower Trust is her argument that GMACM unjustly enriched itself by collecting loan payments to which it was not entitled.  Specifically, she argues that when GMACM acted as the servicer on her mortgage, it did not permit her to make "interest only" payments, which she claims she was entitled to do for five years after taking out the loan (or until the loan balance increased to 110% of the principal). Appellant Br. 21.  She also claims that GMACM had no right to service her loan in the first place. *Id.*  The Bankruptcy Court reviewed the documents in the record and rejected these arguments. *See* Bankr. Op. at 23-24.  As the court explained, the Borrower Trust offered evidence that "GMACM was designated as successor servicer" to the entity that initially serviced Silver's loan. *Id.* at 23.  Additionally, GMACM sent Silver a letter in 2011 explaining that the "interest only" payment option was only valid if that amount was equal to or greater than the

required minimum monthly payment. Dkt. No. 8019, Ex. 5-B at 41 of 124. Silver has pointed to

no evidence in the record that rebuts the Borrower Trust's evidence that GMACM was a valid

servicer of Silver's mortgage and that it charged the appropriate monthly payments.

Accordingly, the Court affirms the Bankruptcy Court's decision that Silver's unjust enrichment

cause of action cannot form the basis of her claim against the Borrower Trust.

### B.      Silver's Motion for Payment

Silver claims that the Borrower Trust failed to respond to her "Motion for Payment" and

that this failure entitles Silver to a default judgment. Appellant Br. 4. As the Bankruptcy Court

explained in denying her motion, however, Silver filed the motion well before the deadline for

the Borrower Trust to object to her claim had passed. Dkt. No. 6706 at 2. Silver's motion raised

the same argument concerning whether her claim was "allowed" as of the Plan's Effective Date

that has been now been rejected by three courts. *See* Dkt. No. 6639. The Bankruptcy Court was

within its discretion to deny the motion without having received an opposition from the

Borrower Trust. *Cf. Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d

Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not

relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.").[3]

### C.      The Doctrine of Unclean Hands

Silver next claims that the doctrine of "unclean hands" should apply here. "Courts apply

the maxim requiring clean hands where the party asking for the invocation of an equitable

doctrine has committed some unconscionable act that is 'directly related to the subject matter in

---

[3] Silver's claim that it was unfair for the Bankruptcy Court to permit the Borrower Trust not to oppose Silver's motion, while prohibiting her from submitting evidence after the evidentiary hearing, misses the mark. Reply Br. 3-4. As explained above, the Bankruptcy Court was entitled to have all of the relevant evidence before it at the evidentiary hearing, which is when it needed to evaluate Keeley's testimony. The court did not, however, similarly require an opposition brief from the Borrower Trust on Silver's motion, as the grounds for denying the Motion for Payment were evident without briefing.

litigation' and has injured the party attempting to invoke the doctrine." *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (quoting *Weiss v. Mayflower Doughnut Corp.*, 135 N.E.2d 208, 210 (1956)).  Specifically, the party asserting unclean hands must prove that "(1) the offending party is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the asserting party and (3) the asserting party was injured as a result." *In re Cohen*, 422 B.R. 350, 381 (E.D.N.Y. 2010) (citing *Kopsidas v. Krokos,* 742 N.Y.S.2d 342, 344 (N.Y. App. Div. 2002)).

Silver argues that GMACM's alleged pattern of fraudulent conduct—she calls the office where Keeley worked "the very epicenter [of] the foreclosure fraud scandal"—provides a basis for applying the doctrine of unclean hands.  Reply Br. 6.  But her allegations in support of this argument rehash her reasons for claiming that GMACM did not have authority to foreclose on the Property.  *See* Appellant Br. 7-8 (challenging the validity of Keeley's signatures on the assignments).  The Court has already concluded that Silver cannot prevail on those arguments. Accordingly, there is no basis for concluding that Silver was injured as a result of any "immoral" or "unconscionable" conduct on the part of GMACM, *In re Cohen*, 422 B.R. at 381, and the doctrine of unclean hands does not apply.

### D.    The Bankruptcy Court's Impartiality

Finally, Silver claims that Bankruptcy Court Judge Martin Glenn lacked impartiality and that Silver was denied due process by having to proceed in front of him.  Silver's charge boils down to two arguments: first, that Judge Glenn is friends with former Bankruptcy Judge James Peck, who has served as a mediator in this bankruptcy and now works for the law firm representing the Borrower Trust; and second, that Judge Glenn's unfavorable rulings against Silver are evidence that he lacks impartiality.  These arguments are frivolous.

Briefly explained, "it is well settled that a judge's acquaintance with a party, an attorney or a witness," or a mediator, for that matter, "without some factual allegation of bias or prejudice, is not sufficient to warrant recusal." *Bailey v. Broder*, No. 94-CV-2394 (CSH), 1997 WL 73717, at *3 (S.D.N.Y. Feb. 20, 1997); *see also United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985), *cert. denied*, 475 U.S. 1012 (1986) ("In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable."). Silver makes no plausible allegations as to how Judge Glenn's friendship with Judge Peck has in any way affected his ability to resolve her claim impartially, and no reasonable person would have reason to question his objectivity. Additionally, Silver's second argument is nothing more than an attempt to challenge the Bankruptcy Court's decision on the merits from a different angle—having lost the game, Silver protests that the umpire was biased. But the Court has already explained why Silver's legal arguments are unavailing. That Judge Glenn also rejected them is evidence of sound judgment, not bias. The Court therefore joins Judge Daniels in squarely rejecting "any arguments regarding Judge Glenn's partiality." Daniels Op. at 2 n.1.

## IV.    CONCLUSION

For the foregoing reasons, the judgment of the Bankruptcy Court is AFFIRMED in its entirety. The Clerk of Court is directed to close this case.


SO ORDERED:

Dated: March **22**, 2016
       New York, New York

ALISON J. NATHAN
United States District Judge